**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 24-cr-20211-MIDDLEBROOKS

UNITED STATES OF AMERICA,

v.

MOISES RODRIGUEZ SANTIAGO,

Defendant.

_____/

### ORDER DENYING MOTION TO SUPPRESS

THIS CAUSE comes before the Court on Defendant Moises Rodriguez Santiago's Motion to Suppress Evidence and Statements and Request for *Franks* Hearing, filed on September 15, 2024. (DE 25). The Government responded on September 20, 2024. (DE 28). A hearing was held on September 20, 2024. For the following reasons, Defendant's Motion is denied.

### BACKGROUND

In January 2023, law enforcement arrested an individual suspected of being involved in the receipt, distribution, and possession of child pornography (the "Subject"). (DE 1 ¶ 5). Upon searching the Subject's phone, law enforcement discovered conversations involving the Subject on the messaging platform 'WhatsApp,' dating back to 2021 and 2022. The government alleges that the other individual engaged in these conversations was Defendant, a thirty-one-year-old resident of Miami-Dade County. (*Id.* ¶ 6). Through conversations from 2021, Defendant allegedly described to the Subject sexual experiences involving himself and a purportedly fifteen-year-old male. (*Id.* ¶ 7). In addition to recounting graphic details of the encounter, Defendant is alleged to have received several pornographic videos from the Subject featuring other underage males. (*Id.* ¶ 8). In 2022, Defendant relayed to the Subject that he had participated in a second encounter with

the same underage male, this time accompanied by several explicit images depicting the underage male performing illicit acts with Defendant. (*Id.* ¶ 9).

On November 2, 2023, an undercover law enforcement officer ("Undercover Agent") began communicating with Defendant through WhatsApp. (DE 1 ¶ 10). While in communication with the Undercover Agent, Defendant allegedly shared pictures of his face that the Government claims matches those sent to the Subject, and reported that he had been having sexual interactions with a then-seventeen-year-old male since the male was fourteen. (*Id.* ¶¶ 10, 11). The Government alleges that Defendant also shared images of the underage male with the Undercover Agent.

On May 1, 2024, the Government obtained a search warrant, authorizing the search and seizure of any electronic devices belonging to Defendant, along with the digital material therein, and allowing officers to "press or swipe the fingers . . . of [Defendant] to the fingerprint scanner of the [device]." (DE 1 ¶ 13; Warrant Aff. App'x B at 4). The warrant was executed on May 9, 2024, when law enforcement seized from Defendant's person a laptop and mobile phone. (DE 1 ¶ 18). The officers detaining Defendant then confirmed, via on-site inspection, that the WhatsApp account on Defendant's phone matched the account used to communicate with the Undercover Agent. (*Id.* ¶¶ 14, 15). They also discovered messages, images, and videos on Defendant's phone, which the Government claims match those sent to the Subject. (*Id.* ¶¶ 16, 17). Importantly, this was accomplished after Defendant, believing he was obligated to comply with the search warrant, verbally relayed the passcode to his phone, allowing law enforcement to unlock it. (DE 25 ¶ 4).

Defendant was subsequently arrested and subjected to an audio-recorded interview. (DE 1 ¶ 18). After law enforcement advised Defendant of his *Miranda* rights, which Defendant waived verbally and in writing, Defendant confirmed that the phone and laptop seized earlier that day belonged to him, recalled receiving illicit material involving minors from the Subject, and

confessed to his interviewers that he had engaged in sexual relations with a male minor, whom he discovered after the fact was sixteen years old. (*Id.*). Upon being shown the illicit chats, images, and videos exchanged with the Subject, Defendant confirmed the underage male depicted was the same male he had met. (*Id.* ¶ 19). The Government filed its criminal complaint on May 10, 2024.

## DISCUSSION

Defendant moves[1] to suppress the seized cellphone, and the material discovered therein, on two distinct bases. First, Defendant contends that the Affidavit filed in support of the search warrant was materially deficient, calling into question the presence of probable cause and alleging that the Government materially omitted key information from its Affidavit. Second, Defendant claims the search warrant violated his Fifth Amendment right against self-incrimination by permitting law enforcement to use his biometric data (that is, his fingerprint) to unlock the cellphone. Neither basis supplies sufficient grounds for suppression. Finally, Defendant requests a *Franks* hearing on the basis that the Government omitted two material facts from its Affidavit.

### A. THE SEARCH WARRANT

Defendant asserts that the search warrant issued on May 1, 2024, and executed on May 9, 2024, lacked requisite probable cause. (DE 25 at 4). Defendant claims in particular that the temporal gap between when law enforcement discovered incriminating material on the Subject's phone and when the search warrant was issued renders "stale" any potential basis for probable cause. (*Id.* at 3, ¶ 6). In support of this, Defendant points to the fact that the phone seized pursuant

---

[1] I note that Defendant's motion is also untimely. Under Local Rule 88.9(c), motions in criminal cases "shall be filed and served within twenty-eight (28) days from the arraignment of the defendant," unless there is a post-arraignment event—in which case such motion will be raised "within a reasonable time" after the event. S.D. Fla. L.R. 88.9(c). Defendant was arraigned on May 24, 2024, which began the clock on any motion to suppress relating to the search warrant. Defendant does not allege any post-arraignment event supplying grounds for the rule's exception. Defendant has filed this motion at the eleventh hour, a mere week before trial is scheduled to begin. The motion is subject to denial on this ground alone.

to the search warrant was an Apple iPhone Pro Max 14, which did not debut until "one year after the purported child pornography was sent." (*Id.* ¶ 7).

Defendant's argument is unavailing. At the outset, it is unclear what stretch of time would render the evidence underlying the search warrant "stale." The ordinary test for staleness employed by the Eleventh Circuit is a flexible one, for "[n]o mechanical test exists for determining when information becomes fatally stale. Rather, staleness is an issue which must be decided on the peculiar facts of each case." *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000). Examining whether probable cause has become fatally stale requires an analysis of five factors, including (1) the length of time between when the information was obtained and the time when the search warrant was executed, (2) the nature of the suspected crime, (3) the habits of the accused, (4) the character of the items sought, and (5) the nature and function of the premises to be searched. *Id.* at 1265; *United States v. Harris*, 20 F.3d 445, 450–51 (11th Cir. 1994). Usually in a motion to suppress, Defendant largely has the burden to demonstrate that the evidence for probable cause has gone stale, as when reviewing the validity of a search warrant, the issuing judge's determination "should be paid great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

Here, Defendant's motion fails to offer any compelling analysis under this Circuit's test that the evidence used by the issuing judge was stale "at the time the warrant [was] issue[d]." *Bervaldi*, 226 F.3d at 1264. Defendant offers no interval upon which the evidence in this case became impermissibly stale, and tellingly cites no law in support of his position. Defendant only cites the fact that the particular model of the phone seized during the search did not exist at the time the Subject received illicit videos on WhatsApp. This fact is of little consequence. That Defendant had changed his phone does not mean that, when the court reviewed the Affidavit, "[t]here [was] no probable cause to believe that [Defendant] would be in possession of any child

4

pornography." (DE 25 ¶ 6). Indeed, neither the warrant nor the Affidavit specified a type or model of phone, as law enforcement identified Defendant from the WhatsApp account in question via the phone *number* used to create the account, and the Government offered compelling analysis that a crime of this sort can readily transcend any particular device due to the nature of the illicit material. (Warrant Aff. ¶ 11; DE 28 at 9-11). Moreover, the Government's Affidavit was not solely reliant on the videos sent three years prior to the warrant's issuance. The Affidavit also contains sworn statements from the Undercover Agent, detailing identifying information allegedly shared from the same WhatsApp account by Defendant a mere six months prior to the warrant's issuance. (Warrant Aff. ¶¶ 19, 20); *see also Bervaldi*, 226 F.3d at 1265 (holding that an issued search warrant was not stale despite a six-month evidentiary gap). On this showing, I find there was more than sufficient probable cause underlying the search warrant.

Even if I were to entertain Defendant's Fourth Amendment claim, suppression would not be available in this case. As the Supreme Court has instructed, suppressing evidence via the exclusionary rule is not proper where officers seize evidence in reasonable, good faith reliance on a search warrant. *See United States v. Leon*, 468 U.S. 897, 913-14 (1984); *Arizona v. Evans*, 514 U.S. 1, 14-16 (1995). Such reliance will forego application of the exclusionary rule unless (1) the magistrate or judge issuing the warrant was misled by false information, submitted by the affiant either knowingly or recklessly; (2) the issuing magistrate wholly abandoned their neutral and detached judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not reasonably have presumed it to be valid. *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 500 (2021); *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

Here, the good faith reliance exception to the exclusionary rule applies. In gathering the evidence underlying the Affidavit and supplying it to the court, "[t]he officers did everything they should have. They obtained and relied on a warrant from a neutral magistrate and had no reason to think that probable cause was absent despite the magistrate's authorization." *Morales*, 987 F.3d at 974. Therefore, even if I were to "assume that the magistrate erred in finding probable cause, suppressing the evidence found during the search of [Defendant] would do nothing to deter future police misconduct," rendering application of the exclusionary rule improper. *Id.* Moreover, Defendant does not allege sufficient grounds to apply any of the four narrow carveouts to the good faith reliance exception. Defendant does not allege that the issuing magistrate failed to be neutral, that the warrant was facially deficient, or that it would be "entirely unreasonable" to have found probable cause in this case. Defendant attempts to infer that the magistrate was "misled" by the Government's material omissions under *Franks*, but as explained below, this attempt is devoid of substance. *See infra* at 8-10. Accordingly, Defendant's objection to the search of his phone on Fourth Amendment grounds fails both on the merits and in seeking appropriate relief.

**B. DEFENDANT'S BIOMETRIC DATA**

Next, Defendant contends that the warrant, in permitting the government to collect and use Defendant's fingerprint, violated his Fifth Amendment right against self-incrimination. Defendant begins by observing that "an act [which] would require the compulsion of a testimonial communication that is incriminating" runs afoul of the Fifth Amendment, which provides that no person "shall be compelled in any criminal case to be a witness against himself." (DE 25 at 5 (citing U.S. CONST. amend. V; *Fisher v. United States*, 425 U.S. 391, 409 (1976))). At the heart of Defendant's theory is the assertion that "the use of a suspect's biometric feature to potentially unlock an electronic device is testimonial under the Fifth Amendment." (DE 25 at 5). Citing a

magistrate opinion from the Northern District of California, Defendant emphasizes that the use of a fingerprint for the purposes of obtaining access to a suspect's content "in lieu of a passcode" differs materially from "fingerprinting or a DNA swab," as if "a person cannot be compelled to provide a passcode . . . a person cannot be compelled to provide one's finger, thumb, iris, [or] face." *In re Search of a Residence in Oakland, CA*, 354 F.Supp.3d 1010, 1015-16 (N.D. Cal. 2019).

At the outset, Defendant's Fifth Amendment argument suffers from largely the same remedial defect as his Fourth Amendment argument. That is, the procedural posture of Defendant's motion is one of suppression; Defendant is asking to apply the exclusionary rule to evidence already collected pursuant to an issued warrant. (DE 25 at 7). In the caselaw Defendant cites, the court denied a search warrant application *prior to its issuance* on Fifth Amendment grounds. *See In Re Oakland*, 354 F.Supp.3d at 1013. This difference is critical for purposes of applying the exclusionary rule. Even if Defendant raised a colorable Fifth Amendment argument against the warrant's contents, this would not be grounds for suppressing evidence seized in good faith reliance on said warrant. *See Leon*, 468 U.S. at 913-14; *Morales*, 987 F.3d at 974. Further still, Defendant's Fifth Amendment argument fails to justify application of the exclusionary rule for a separate reason: he can point to no harm resulting from the purportedly unlawful warrant provision. The evidence Defendant now seeks to suppress was obtained after Defendant voluntarily[2] and

---

[2] At the hearing, Defense counsel suggested Defendant's statements were not voluntary due to the circumstances of the warrant's execution. Upon testimony from one of the on-scene agents, I am advised that during the warrant's execution, Defendant was initially handcuffed and searched by four agents, who had emerged from a nearby unmarked vehicle with drawn weapons and body armor and approached Defendant outside of his school's campus. Following the search, which yielded no weapon but which produced Defendant's phone, Defendant was led to a secondary vehicle while he was informed of the warrant and instructed that he was not under arrest. At some point before reaching the secondary vehicle, Defendant was uncuffed. Upon reaching the secondary vehicle, Defendant spoke with three agents, who wore holstered weapons and no body armor. The agents again reminded Defendant that he was not under arrest, read him his rights under *Miranda*, and informed Defendant that the warrant permitted access to his electronic devices via fingerprint. Under these conditions, Defendant gave his passcode to the agents. (DE 28 at 4).

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). Ordinarily, such coercive activity involves the employment of threatening, intimidating, or deceptive practices by law enforcement, or the purposeful exploitation of a suspect's mental incapacity. *See, e.g., Miller v. Dugger*, 838

*verbally* gave his phone's passcode to law enforcement. (DE 25 ¶ 4). Whether or not the warrant authorized collection of Defendant's fingerprint is thereby immaterial, as his fingerprint was not used to discover the evidence at issue. Defendant's claim, then, supplies no basis for suppression.

Defendant's Fifth Amendment argument also fails on the merits. In contravention of the caselaw Defendant cites, collection of a fingerprint—even for prosecutorial purposes—does not constitute "compulsion of a testimonial communication." Indeed, after the Northern District of California's opinion was rendered the Ninth Circuit concluded that the analogy between a fingerprint and a passcode, adapted from Justice Stevens's "key vs. combination" analysis, was a spurious one. *See United States v. Payne*, 99 F.4th 495, 511 (9th Cir. 2024) (citing *United States v. Hubbell*, 530 U.S. 27, 43 (2000)). The court explained that "[w]hile providing law enforcement officers with a combination to a safe or passcode to a phone would require an individual to divulge the 'contents of his own mind,' turning over a key to a safe or a thumb to unlock a phone requires no such mental process." *Id.* (quoting *Hubbell*, 530 U.S. at 43). I concur with the Ninth Circuit's reasoning. The employment of a fingerprint cannot be likened to partly non-communicative items or actions which have been found to be testimonial, as at no point would law enforcement engage the mental faculties of the Defendant in obtaining and using the fingerprint. Consequently, I see no reason to question the legal validity of the search warrant on Fifth Amendment grounds.

---

F.2d 1530, 1536 (11th Cir. 1988); *Purvis v. Dugger*, 932 F.2d 1413, 1422 (11th Cir. 1991). Here, no such deceptive or coercive tactics were employed. The initial protective pat-down, conducted by four armed and armored agents, was intended to ensure Defendant was not carrying a weapon. At no point did these officers evoke or attempt to evoke a statement from Defendant. By the time Defendant was asked whether he would speak with the three unarmed, unarmored agents, he was no longer handcuffed, and was free to either remain silent or terminate the encounter. This reality is reinforced by the fact that the agents told Defendant repeatedly and directly that he was not under arrest and, seemingly for good measure, informed Defendant of his rights under *Miranda*, including his right to remain silent. The only allegedly coercive element of the agents' conversation with Defendant was their invocation of the search warrant. The agents informed Defendant that the search warrant authorized them to obtain a fingerprint in order to gain access to the seized phone. This was not improper. Not only was this statement a correct estimation of the legal authority conveyed by the warrant, but the statement also did not place undue coercive pressure on Defendant. The statement is functionally indistinguishable from an officer informing a suspect that he "could go get a warrant" if the suspect does not consent to a search. Laying out alternative, legal courses of conduct does not amount to unduly coercing a suspect under modern due process jurisprudence. Defendant's voluntariness claim is thereby without merit.

## C. DEFENDANT'S REQUEST FOR A *FRANKS* HEARING

Finally, Defendant's request for a *Franks* hearing, predicated on the allegation that the Government materially omitted key information from the Affidavit, is unfounded. Citing *Franks v. Delaware*, 438 U.S. 154 (1978), Defendant proffers two material omissions by the Government: first, the "fact that [Defendant] had a new cellular telephone that did not exist in 2021 when the child pornography was purportedly exchanged," and second, that "the investigation failed to uncover any evidence that [Defendant] was a collector" of child pornography. (DE 25 at 4). Defendant concludes that if these facts were included in the warrant application, "there [would be] no probable cause to issue the warrant," and thereby demands a hearing under *Franks*. (*Id.*).

In *Franks v. Delaware*, the Supreme Court held that the Government, in applying for a warrant, is obligated to submit information "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. Underlying this duty is the uncontroversial maxim that "when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Id.* at 164-65 (citing *United States v. Halsey*, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), *aff'd*, Docket No. 31369 (CA2, June 12, 1967) (unreported)). Where the Defendant makes a sufficiently strong preliminary showing questioning the veracity of a search warrant on the grounds that the Government intentionally or recklessly submitted false information, the Defendant is entitled to an evidentiary hearing. *See United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks*, 438 U.S. at 155).

Material omissions, when knowingly or recklessly made by the Government, may supply grounds for relief under *Franks*. *See United States v. Goldstein*, 989 F.3d 1178, 1197 (11th Cir. 2021) (explaining a hearing is needed "when a defendant makes a substantial preliminary showing that statements or *omissions* made in an affidavit" are false or withheld (emphasis added)); *United*

States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009). However, the Defendant must still offer proof that the omissions occurred because of the Government's intentional or reckless disregard for the truth. See Goldstein, 989 F.3d at 1197; Kapordelis, 569 F.3d at 1309; United States v. Moon, 33 F.4th 1284, 1301 (11th Cir. 2022). As the Franks Court explained, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." Franks, 438 U.S. at 171. Further, unless the omissions in question are "necessary to the finding of probable cause," no relief under Franks is proper. United States v. Capers, 708 F.3d 1286, 1296 (11th Cir. 2013); Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997) ("[E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." (citing United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990))); see also Franks, 438 U.S. at 172. Any Defendant seeking a Franks hearing must, therefore, supply some sort of proof showing both the Government's impropriety and the omission's significance.

I am not persuaded that Defendant deserves a hearing. Franks does not permit "fishing expeditions into affidavits that are otherwise presumed truthful." United States v. Falso, 544 F.3d 110, 125 (2nd Cir. 2008). Here, Defendant casts an especially shoddy line. To be granted a hearing, Defendant must offer proof that the Government (1) knowingly or recklessly omitted facts that (2) were dispositive to probable cause. Defendant fails on both fronts. He levies a bare assertion that the Government failed to include two facts: that the Defendant changed to a newer phone model, and that the Defendant had not been identified as a "collector" of child pornography. (DE 25 at 3). Nowhere does Defendant offer proof the Government acted intentionally or recklessly. Defendant states only that law enforcement may have known of Defendant's phone type, as the Government

subpoenaed Defendant's cell carrier. (*Id.* at 3, ¶ 7). This is not evidence of wrongfully withholding information. As to Defendant's status as a "collector," Defendant essentially takes a guess that "[i]t makes sense that the Agents in this case would have investigated whether the Target Telephone Number" belonged to a known "collector" of child pornography by working with specialized NGOs. (*Id.* ¶ 8). To say that Government action "makes sense" does not adequately show that law enforcement even *knew* of the "fact" omitted, much less intentionally withheld it.

Finally, and perhaps most compellingly, Defendant does not explain why either of the two omitted facts would be dispositive in the magistrate's finding of probable cause. In addition to offering proof of the Government's intentional or reckless conduct, Defendant has the burden of demonstrating that "absent those misrepresentations or omissions, probable cause would have been lacking." *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001). Here, Defendant says only that "[w]hen [these] material facts are added to the warrant application, there is no probable cause to issue the warrant." (DE 25 at 4). This statement, backed by no analysis or supporting facts, is the epitome of the "conclusory" challenges the *Franks* Court sought to avoid. In fact, upon scrutinizing the facts presented, it is evident the omitted facts would have been immaterial to the court's issuance of the warrant. *See supra* at 4-5. Defendant fails, therefore, to make either of the two requisite showings to be afforded a *Franks* hearing.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion (DE 25) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 20 day of September, 2024.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

CC:     Counsel of Record